IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 15, 2005

## KENNY CARSON COCKRELL, JR., v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-04-116    Donald H. Allen, Judge**

---

**No. W2004-02923-CCA-R3-PC  - Filed January 4, 2005**

---

The petitioner, Kenny Carson Cockrell, Jr., pled guilty in the Madison County Circuit Court to six counts of aggravated robbery and one count of attempted aggravated robbery, and he received a total effective sentence of twenty-five years incarceration in the Tennessee Department of Correction. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective. After a hearing, the post-conviction court denied the petition, and the petitioner now appeals. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. AND J.C. MCLIN, JJ., joined.

Benjamin C. Mayo, Jackson, Tennessee, for the appellant, Kenny Carson Cockrell, Jr.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; James G. Woodall, District Attorney General; Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On January 24, 2002, the petitioner pled guilty to six counts of aggravated robbery and one count of attempted aggravated robbery. The plea agreement provided no recommendation by the State regarding the sentence to be imposed. The trial court originally imposed a total effective sentence of twenty-eight years. However, on appeal, this court reduced the petitioner's total effective sentence to twenty-five years. State v. Kenny Carson Cockrell, Jr., No. W2002-00545-CCA-R3-CD, 2003 WL 1860529, at *1 (Tenn. Crim. App. at Jackson, Apr. 2, 2003). The petitioner appealed his sentence, and on direct appeal, this court summarized the facts underlying the offenses as follows:

The [petitioner's] guilty pleas arose out of a series of armed robberies which the [petitioner] committed with his cousin over a two week period in December 2000. The robberies each took place at a convenience store. At the first robbery, the [petitioner] entered the store and pointed a handgun at the clerk, demanding money. She complied, handing the money to the [petitioner's co-defendant]. The two then drove away. In the subsequent robberies, the [petitioner] provided the handgun, waited in the car to drive away after the robbery, and received a portion of the proceeds. At one of the convenience stores, the clerk refused to cooperate and the [petitioner's co-defendant] fled the store without any money.

. . . .

The police first apprehended the [petitioner's co-defendant], who confessed and implicated the [petitioner]. When the [petitioner] heard that the police were looking for him, he immediately turned himself in and made a full confession. He subsequently pled guilty and expressed remorse for his crimes.

At the sentencing hearing, several of the [petitioner's] relatives testified and described their surprise at the [petitioner's] criminal behavior. They reported that this activity was totally out of character, and they were convinced that the [petitioner] had learned his lesson while in jail and would never resume his criminal career if given a second chance. They explained that the [petitioner] was "slow" and easily influenced by others.

Id.

Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective in failing to pursue a motion to suppress his confession to police. The petitioner argued that he did not knowingly and voluntarily waive his Miranda rights or make a statement to police.

At the post-conviction hearing, the petitioner's trial counsel testified that she was an assistant public defender when she represented the petitioner. She stated that early in her representation, she became aware that the petitioner had certain mental limitations. Therefore, she sent the petitioner for a psychological evaluation. Dr. Aday, a psychologist who conducted the evaluation, found that the petitioner was competent to stand trial and was not insane at the time of the offenses. However, Dr. Aday told counsel that the petitioner's IQ was "borderline," and he had the potential to be "easily led." Regardless, counsel recalled that Dr. Aday found no reason to believe that the petitioner's confession was not voluntarily made.

-2-

Counsel stated that she did not file a motion to suppress the petitioner's confession. She explained that she spoke with the petitioner who "indicated there was no force or coercion made with regards to his confession." Additionally, counsel spoke with Detective J.R. Golden and Officer Jeff Austin, the Madison County officers to whom the petitioner confessed. After speaking with the petitioner and the officers, counsel concluded that there was no force or coercion used in obtaining the petitioner's statement and that a motion to suppress would have been frivolous. When asked if she discussed with the petitioner the possibility of filing a motion to suppress, counsel responded:

> I don't know that I actually discussed the possibility. I know I discussed [a motion to suppress], and [the petitioner] made an evaluation of whether to file one or not. Whether we actually discussed the filing of the motion, I don't – I don't recall.

Counsel acknowledged that at the sentencing hearing Detective Golden stated that without the confessions of the petitioner and his co-defendant, it was possible that not all of the crimes would have been solved.

Counsel maintained that even if she had pursued a motion to suppress, the State still had ample evidence against the petitioner. Counsel recalled that the co-defendant confessed before the petitioner did, and the victims of the aggravated robberies were witnesses to the crimes. Further, the gun and the car that were used in the robberies could be traced to the petitioner. Counsel maintained that she requested discovery in the petitioner's case and reviewed the discovery materials with him.

Counsel stated that she began discussing with the petitioner and his mother the possibility of a plea bargain on August 23, 2001, months before the petitioner entered his guilty pleas. The petitioner and the State entered into a proposed plea agreement wherein the petitioner would plead guilty to the charged offenses in exchange for an effective twelve-year sentence. This plea was rejected by the trial court. Thereafter, the petitioner agreed to plead guilty to the charged offenses without the benefit of a sentencing recommendation from the State.

Mattie Farrington, the petitioner's mother, testified that she believed the petitioner was going to plead guilty and receive a twelve-year sentence. She was surprised when the petitioner received a longer sentence, despite having been told that there was a possibility that the petitioner could "get a little more time." Farrington stated that when the petitioner pled guilty, he did not know what was going on. She opined, "I think he was somewhat misled." She also believed that the petitioner did not understand concurrent and consecutive sentencing, stating, "I know my child."

The petitioner testified that he had been offered a plea agreement that provided an effective twelve-year sentence, which plea agreement was rejected by the trial court. The petitioner stated that he was not present in court when the plea agreement was rejected. During cross-examination, the State questioned the petitioner as to his understanding of the plea process:

[State]: And you're also capable of understanding you had the right
to an attorney?

[The petitioner]: Yes, sir.

[State]: And you're capable of understanding you had the right to a
jury trial?

[The petitioner]: Yes, sir.

[State]: And you're capable of understanding that the Judge is going
to be the one that sentences you and not a jury.

[The petitioner]: That part had me a little confused.

The petitioner acknowledged that when he was questioned by the trial court during the plea process, he did not reveal his confusion. The petitioner explained, "My mouth just didn't open up." The petitioner admitted that he told the court that he understood the proceedings, saying that it seemed like the only thing he was able to say was "Yes, sir."

The petitioner acknowledged that he truthfully confessed his participation in the crimes to the police. The petitioner recalled that counsel was not present when he made his confession. The petitioner stated that at the time he confessed, he was not aware of his right to counsel or his right to remain silent. He admitted that he signed a waiver of rights form which advised him of his rights, but he claimed that he was not given the form until after his statement was concluded. The petitioner said that prior to his confession, an officer "said in so many words that it seemed like something would be worked out . . . if I [confessed]."

The petitioner initially stated that he did not recall if counsel ever discussed filing a motion to suppress; thereafter, the petitioner stated that no one ever explained what a motion to suppress was or talked about pursuing the suppression of his confession. The petitioner asserted that if there was a "fighting chance" that the motion would have been successful, he would have wanted a motion to suppress pursued prior to entering his guilty pleas.

Based upon the foregoing, the post-conviction court found that the petitioner did not establish that his counsel was ineffective. The petitioner now appeals this ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the

-4-

evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

On appeal, the petitioner argues that he "received ineffective assistance of counsel before [he] entered a 'blind' guilty plea in the trial court." Specifically, the petitioner alleges that counsel was deficient in "advising [him] and in not filing and arguing a motion to suppress [his] confessions."

In its order denying the petition for post-conviction relief, the post-conviction court credited the testimony of trial counsel. The court found that counsel competently and adequately counseled the petitioner and prepared and investigated the case. Further, the court determined that the petitioner voluntarily, knowingly, and intelligently entered his guilty pleas. The court explicitly found that counsel decided not to file a motion to suppress the petitioner's confession after conducting a full and thorough investigation of the circumstances surrounding his confession. The court stated, "Her determination that there was 'no legal basis' to file such a motion to suppress the voluntarily given statement was appropriate."

Our review of the record supports the post-conviction court's determinations. Counsel questioned the petitioner and the officers involved regarding the confession. Further, keeping in mind the petitioner's mental impairments, counsel spoke with Dr. Aday, the psychologist who evaluated the petitioner. Dr. Aday determined that the petitioner's mental impairments would not have impacted the voluntariness of his confession. Thus, counsel determined not to pursue a motion

to suppress.  On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight."  See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982).

Also, counsel testified that even without the petitioner's confession, ample evidence remained to tie him to the charged offenses.  Accordingly, she and the petitioner considered plea offers, and, ultimately, the petitioner decided to enter his guilty pleas.  The petitioner has presented no proof that a motion to suppress would have been successful, nor has the petitioner ever maintained that without counsel's alleged error he would not have pled guilty and would have instead gone to trial.  Therefore, the petitioner has not met his burden of establishing the ineffective assistance of counsel by clear and convincing evidence.

### III.  Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE